UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TELEBRANDS CORP., | ) |
| Plaintiff, | ) Case No. 18-CV-06318 |
| v. | ) Judge Sharon Johnson Coleman |
| MY PILLOW, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Telebrands Corporation filed a five-count complaint against defendant My Pillow, Inc., alleging breach of contract, breach of implied contract, tortious interference with business expectancy, unjust enrichment, and quantum meruit. Telebrands moves to dismiss Counts II-V of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons outlined below, My Pillow's Partial Motion to Dismiss [12] is granted.

**Background**

Telebrands is a consumer products marketing company, and My Pillow manufactures and sells its patented pillow product. Telebrands alleges that My Pillow and Telebrands entered into a License Agreement on May 30, 2012, under which My Pillow had the right to market its pillows directly to consumers, and Telebrands had the exclusive right to "advertise, promote, market, distribute, and sell" My Pillow brand pillows in North American brick and mortar retail stores and their associated online outlets. (Dkt. 1-1 §§ 1–2.) The License Agreement provided for a one-year term and would automatically renew for successive one-year terms if Telebrands ordered at least 1,000,000 units in the immediate prior year. (*Id.* § 13.)

In the year ending in May 2014, Telebrands purchased 210,000 units. My Pillow's CEO Mike Lindell sent an email to Telebrands that stated: "As you know, the current License Agreement will end <u>on May 30</u> because sales did not hit the 1,000,000 mark. I would like to set up a time to meet with you … to put together a new agreement." (Dkt. 1-2.) The parties did not sign a new agreement. However, the parties continued to do business, with Telebrands purchasing more than 8 million My Pillow units from My Pillow since the initial License Agreement in 2012. In March 2018, Telebrands successfully negotiated for Walmart to add the My Pillow product to its main bedding department. Telebrands also had success selling the My Pillow product to a number of other major retails in the U.S., including Kohl's and Bed Bath & Beyond.

On August 21, 2018, My Pillow provided a letter to Telebrands that discontinued its relationship with Telebrands and indicated that My Pillow would fulfill all outstanding purchase orders for which Telebrands had paid a deposit. (Dkt. 1-3.) Telebrands responded to My Pillow by email on August 24, 2018, repudiating My Pillow's attempt to discontinue the parties' business relationship because the License Agreement "remains in full force and effect" and requesting that My Pillow continue "in good faith to honor the parties' agreement." (Dkt. 1-4.) On August 27, 2018, My Pillow sent another letter to Telebrands, taking the position that the License Agreement expired in May 2014 and that no new master agreement was ever entered, so the parties have merely "entered into a series of purchase orders." (Dkt. 1-5.) My Pillow also emailed a Walmart representative on August 30, 3018, regarding the possibility of selling the My Pillow product directly to Walmart. (Dkt. 1-7.)

Telebrands then brought this suit on September 17, 2018. My Pillow now moves to dismiss Counts II-V of the Complaint for failure to state a claim.

**Legal Standard**

When considering a Rule 12(b)(6) motion, the court accepts all of the plaintiff's allegations as true and views them "in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Pleadings consist of the complaint, the answer, and any written instruments attached as exhibits. *See* Fed. R. Civ. P. 10(c); *see also Hous. Auth. Risk Retention Grp., Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004). The Seventh Circuit interprets "written instruments" to include contracts and correspondence between parties. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 453 (7th Cir. 1998). Thus, the Court may consider the License Agreement and correspondence between Telebrands and My Pillow, attached to the Complaint as Exhibits 1–7.

**Analysis**

My Pillow first argues that it cannot tortuously interfere with its own contract, so it could not interfere with a business expectancy that was created by that contract. Telebrands responds that My Pillow's argument is contrary to its position that no contract existed in 2014 and that Telebrands is entitled to plead alternative theories, in the event that the Court determines that no express or implied contract has been governing the parties' business relationship. Further, Telebrands contends that My Pillow mischaracterizes Telebrands' claim. Rather than alleging that My Pillow interfered with the expectancy created by the License Agreement, Telebrands maintains that it

alleges that My Pillow's conduct after the improper termination of the License Agreement damaged Telebrands' reputation and standing with retail customers.

Under Illinois law, a claim for tortious interference with business expectancy must allege: (1) plaintiff had a reasonable expectancy of entering into a valid business relationship; (2) defendant had knowledge of the expectancy; (3) defendant intentionally and unjustifiably interfered with the realization of the business expectancy; and (4) damages resulting from the interference. *A-Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1404 (7th Cir. 1992). It is undisputed that the only parties at issue are My Pillow and Telebrands, who are one time had a valid contract. "[A] party cannot tortiously interfere with its own contract,' nor can it tortiously interfere with any business expectancies created by that contract.'" *Heiman v. Bimbo Foods Bakeries Distribution Co.*, 902 F.3d 715, 720 (7th Cir. 2018) (citing *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 503, 765 N.E.2d 1079 (1st Dist. 2002)). Tortious interference with business expectancy requires that My Pillow's interference was directed toward a third party. *Slamecka v. Empire Kosher Poultry, Inc.*, No. 03 C 4122, 2004 WL 1882241, at *3 (N.D. Ill. Aug. 12, 2004) (Gettleman, J.). That means that Telebrands does not have a cause of action against My Pillow for conspiring to breach their own contract or for wrongfully interfering with its own contract. *Heiman*, 902 F.3d at 720; *Slamecka*, 2004 WL 1882241 at *3.

Here, the inquiry is whether Telebrands sufficiently alleges that My Pillow had a reasonable expectation of entering a valid business relationship that Telebrands interfered with through actions directed at a third party that caused harm to My Pillow. Telebrands alleges that the License Agreement provided it a license "to exclusively advertise, promote, market, distribute, and sell the My Pillow product." (Dkt. 1 ¶ 13.) It further alleges that My Pillow interfered with Telebrands' relationships by "wrongfully attempting to sell [My Pillow's own product] directly to Telebrands' customers." (*Id.* ¶ 45.) It is clear from Telebrands' own allegations that its claims of alleged harm

4

are based on an expectancy rooted in the parties' expired License Agreement. Such a claim does not constitute tortious interference with business expectancy under Illinois and is dismissed.

Further, My Pillow contends that Telebrands' tortious interference with business expectancy claim should be dismissed due to the competitor's privilege affirmative defense. Telebrands responds that Illinois law does not require it to anticipate and provide allegations against the competitor's privilege in its complaint. Under Illinois law, commercial competitors are privileged to interfere with each other's business expectancy. *See Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865 (7th Cir. 1999) (citing *Soderlund Bros., Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 615, 663 N.E.2d 1 (1st Dist. 1995)); *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 731 (7th Cir. 1999).

Although "[a] litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense," *U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003), the Illinois Supreme Court emphasized that the competitor's privilege is "an affirmative defense to the tort of intentional interference with prospective business advantage." *Gen. Motors Corp. v. State Motor Vehicle Review Bd.*, 224 Ill.2d 1, 15, 862 N.E.2d 209 (2007). As a result, federal courts have not required plaintiffs to overcome the competitor's privilege in the complaint itself. *See, e.g.*, *Serv. By Air, Inc. v. Phoenix Cartage & Air Freight, LLC*, 78 F. Supp. 3d 852, 869 (N.D. Ill. 2015) (Dow, J.); *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1053 (N.D. Ill. 2017) (Chang, J.). This Court also finds that this alternative argument would not serve as grounds to dismiss Telebrands' tortious interference with business expectancy claim. However, as discussed, this claim is dismissed due to its failure to allege that the harm is independent of the License Agreement.

Next, My Pillow contends that Telebrands' claim for unjust enrichment cannot survive because Telebrands has claimed the existence of a contract and did not properly plead this count in the alternative. Telebrands responds that it alleges unjust enrichment in the alternative and a requirement of a specific carveout language places form over substance. Unjust enrichment is a

5

quasi-contractual equitable remedy that is available when "no actual agreement exists between the parties but a duty is imposed to prevent unjustness." *C. Szabo Contracting, Inc. v. Lorig Const. Co.*, 2014 IL App (2d) 131328, ¶ 24, 19 N.E.3d 638 (2d Dist. 2018). Generally, there can be no claim for unjust enrichment where the plaintiff alleges that there is an express contract between the parties and does not plead unjust enrichment in the alternative. *Compare Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772, 777 (N.D. Ill. 2006) (Castillo, J.) (citing *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill.2d 473, 497, 607 N.E.2d 165 (1992)); *Citadel Grp. Ltd. v. Sky Lakes Med. Ctr., Inc.*, No. 06-C-6162, 2008 WL 1924958, at *7 (N.D. Ill. Apr. 30, 2008) (Lefkow, J.), *with NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 17 C 8829, 2018 WL 3637356, at *10 (N.D. Ill. July 31, 2018) (Castillo, J.).

Telebrands does just that. Paragraph 47 of the complaint reasserts all allegations previously stated, include those claiming the existence of a contract. (Dkt. 1 ¶ 47.) Further, in paragraph 48, Telebrands alleges that "[b]y engaging in the conduct described above, including by wrongfully purporting to terminate the License Agreement … [My Pillow] has unjustly enriched itself[.]" (*Id.* ¶ 48.) It is clear that Telebrands' unjust enrichment claim is premised on an express contract, which cannot survive under Illinois law. The Court dismisses this count.

Telebrands' quantum meruit claim suffers from the same general deficiency as its unjust enrichment claim. My Pillow contends that a quantum meruit claim likewise cannot arise when an alleged contract exists between the parties concerning the same subject matter upon which the quasi-contractual claim exists. Telebrands maintains that it also alleges quantum meruit in the alternative of its breach of contract claim. Quantum meruit is a claim predicated on a contract implied by law. *Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008). This claim also dictates that a plaintiff cannot recover when an actual contract governs the parties' relations on that issue. *Id.*; *Cole-Haddon, Ltd.*, 454 F. Supp. 2d at 777. As discussed, because

6

Telebrands incorporates and re-alleges the allegations concerning its express contract, its quantum meruit claim fails to state a claim, and therefore the Court grants dismissal of this claim. (Dkt. 1 ¶ 50.)

Finally, Telebrands asserts that My Pillow's breach of implied contract should be dismissed because the statute of frauds precludes the claim and because it is duplicative of My Pillow's unjust enrichment count. My Pillow responds that the alleged implied contract had the same terms as the License Agreement, neither of which were a contract for the sale of goods. As such, My Pillow argues that the statute of frauds does not apply to the contracts of the parties. Further, My Pillow contends that although its unjust enrichment claim and breach of implied contract may rise and fall together, it is not improper to plead both counts.

The statute of frauds applicable to the sale of goods, Section 2-201(1) of the Uniform Commercial Code ("UCC"), makes a contract for the sale of goods worth at least $500 unenforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." 810 ILCS 5/2-201(1) (Illinois law adopting the UCC statute of frauds). Illinois courts consistently hold that the statute of frauds is a defense to the enforcement of implied contracts. *See, e.g.*, *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, No. 11-2160, 2011 WL 6000828, at *3 (C.D. Ill. Nov. 1, 2011), report and recommendation adopted, No. 11-2160, 2011 WL 6000888 (C.D. Ill. Nov. 30, 2011); *Palmateer v. Int'l Harvester Co.*, 85 Ill. App. 3d 50, 52, 406 N.E.2d 595 (3rd Dist. 1980), aff'd in part, rev'd in part, 85 Ill.2d 124, 421 N.E.2d 876 (1981).

In Illinois, when a contract covers both the sale of goods and services, the "predominant purpose" test is used to determine which section of the UCC covers the contract. *See Ryan v. Wersi Elecs. GmbH & Co.*, 3 F.3d 174, 181 n.3 (7th Cir. 1993). If the contract is predominately for the sale of goods, the contract will be governed by Article 2 of the UCC. *Geneva Int'l Corp. v. Petrof, Spol,*

*S.R.O.*, 608 F. Supp. 2d 993, 999 (N.D. Ill. 2009) (Moran, J.). "Distributorship agreements … are frequently though not always classified as UCC contracts under the predominant-purpose test." *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1184 (7th Cir. 1991).

Here, paragraph 1 of the parties' License Agreement granted Telebrands the exclusive license "to advertise, promote, market, distribute and sell Current Product and use the IP Rights in connection therewith." (Dkt. 1-1 § 1.) The sale of the My Pillow product was the predominant purpose of the License Agreement and all of the concessions in paragraph 1 are rooted in the sale of goods. Without the sale of the My Pillow product, Telebrands would have no reason to use My Pillow CEO's likeness "in association with the advertising, packaging, marketing and sale of [the pillows]." (*Id.* § 1(c).) *See Monetti*, 931 F.2d at 1184 (contract for exclusive distribution rights, which included specified minimum purchases of goods, deemed a contract for the sale of goods where the amount in sales contemplated "swamped" the intangibles associated with the former distributor's operation); *Ryan*, 3 F.3d at 181 n.3 (exclusive distributorship for sale of musical instruments was a mixed contract, but predominantly a contract for the sale of goods); *Geneva Int'l Corp.*, 608 F. Supp. 2d at 999 (holding that the license provisions were incorporated into an existing contract that was "unquestionably a contract for the sale of goods" and subject to Article 2 of the UCC).

Telebrands further contends that the statute of frauds does not apply here due to the doctrine of partial performance. *See Mach Mold Inc. v. Clover Assocs., Inc.*, 383 F. Supp. 2d 1015, 1027–28 (N.D. Ill. 2005) (Coar, J.). The UCC doctrine of partial performance is limited to "goods for which payment has been made and accepted or which have been received and accepted." 810 ILCS 5/2-201(3)(c). Therefore, partial performance does not apply prospectively. Although Telebrands alleges that the parties have been performing under an implied agreement since 2014, Telebrands does not allege that My Pillow has breached the implied contract based on existing or past sales.

8

Thus, the partial performance exception does not apply and the statute of frauds applies here. Without a written agreement, Telebrands' breach of implied contract claim cannot stand.

Moreover, as My Pillow admits, where unjust enrichment and breach of implied contract claims rest on the same improper conduct, then the two claims will stand or fall together. *See Clearly v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). The underlying circumstances alleged for these claims are similar. However, for its breach of implied contract claim, My Pillow specifically alleges that the count "is expressly plead[ed] in the alternative to breach of express contract." (Dkt. 1 ¶ 37.) This difference is material and prevents dismissal of the breach of implied contract claim on this ground. Still, the Court dismisses this claim due to the statute of frauds.

**Conclusion**

Based on the foregoing, My Pillow's Partial Motion to Dismiss [12] is granted. Counts II-V of Telebrands' Complaint are dismissed.

IT IS SO ORDERED.

Date: 4/30/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge