UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TELEBRANDS CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-CV-06318 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| MY PILLOW, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Telebrands Corporation filed a five-count complaint against defendant My Pillow, Inc., alleging breach of contract, breach of implied contract, tortious interference with business expectancy, unjust enrichment, and quantum meruit. My Pillow filed a six-count counterclaim against Telebrands alleging false advertising in violation of the Lanham Act, violations of the Illinois Uniform Deceptive Trade Practice Act ("IUDTPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), unfair competition, fraud, and breach of contract. Telebrands moves to dismiss the entire counterclaim pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the reasons outlined below, Telebrands' motion to dismiss [17] is granted in part and denied in part.

**Background**

My Pillow is a manufacturer and seller of its patented pillow product online and in retail stores, and Telebrands is a consumer products marketing company. The counterclaim alleges that My Pillow and Telebrands entered into a May 20, 2012 License Agreement, under which My Pillow had the right to market its pillows directly to consumers and Telebrands had the exclusive right to "advertise, promote, market, distribute, and sell" the My Pillow pillows in certain stores. (Dkt. 1-1

1

§§ 1–2.) The License Agreement required Telebrands to comply with all applicable laws in performing under the License Agreement, including complying with the FTC Act. (*Id.* § 9(b).) The License Agreement further provided for a one-year term and would automatically renew for successive one-year terms if Telebrands ordered at least 1,000,000 units in the immediate prior year. (*Id.* § 13.) My Pillow alleges that the License Agreement automatically terminated by its terms in 2014, but the parties continued their business relationship through a series of purchase orders.

Following the termination of the License Agreement, Telebrands represented and agreed not to engage in false advertising of the My Pillow product and to prevent its retail clients from engaging in false advertising. My Pillow alleges as an example that in September 2018 Walgreens.com listed My Pillow's product as "Telebrands My Pillow" and showed a box image that contained an endorsement of the product as "National Sleep Foundation Official Pillow." At that time My Pillow was subject to a consent decree that prohibited My Pillow from making any health claims about its product or advertising it as an "official" product of any organization. My Pillow alleges that it informed Telebrands of the decree, and Telebrands agreed to ensure that its retail clients remove from its advertisements all health claims and/or statements that My Pillow is the "official" pillow; however, Telebrands failed to monitor its retail clients' advertisements to ensure the retailers complied with My Pillow's directives. My Pillow includes similar allegations regarding several other retail clients of Telebrands. During an in-person meeting at Telebrands' office in New Jersey on August 21, 2018, My Pillow CEO Mike Lindell met with Telebrands representative Bala Iyer, and Lindell showed Iyer examples of false advertising from Telebrands' retailers. Iyer then offered to indemnify My Pillow for any damages incurred from the false advertising.

My Pillow further alleges that Telebrands represented and agreed to prohibit and prevent its retail clients from purchasing "ad words" on Google and other search engines. Telebrands has a profit motivation to continue to allow its retailers to purchase "ad words," as each "ad word"

purchase drives a customer to purchase a pillow from a Telebrands' retailer and not from My Pillow directly. Despite numerous demands from My Pillow to Telebrands for its retail clients to stop purchasing "ad words," Telebrands has not taken sufficient corrective actions to stop the improper conduct from several of its retailers.

On August 21, 2018, My Pillow informed Telebrands of its decision to discontinue its business relationship with Telebrands. Telebrands sued My Pillow on September 17, 2018. My Pillow brought this counterclaim on October 9, 2018. Telebrands now moves to dismiss the counterclaim in full.

**Legal Standard**

When considering a Rule 12(b)(6) motion, the court accepts all of the plaintiff's allegations as true and views them "in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Moreover, allegations of fraud must be pleaded in conformance with Rule 9(b). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (ICFA); *Cardionet, Inc. v. Lifewatch Corp.*, No. 07 C 6625, 2008 WL 567031, at *2 (N.D. Ill. Feb. 27, 2008) (Conlon, J.) (Lanham Act and IUDTPA); *Desmond v. Chi. Boxed Beef Distribs., Inc.*, 921 F. Supp. 2d 872, 884–85 (N.D. Ill. 2013) (Castillo, J.) (unfair competition). Under Rule 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The

3

complaint must allege "the who, what, when, where, and how of the fraud." *Pirelli Armstrong*, 631 F.3d at 441–42 (internal quotations and citation omitted).

**Analysis**

The parties disagree as to the pleading standard that should be applied to My Pillow's counterclaims. Telebrands argues that the heightened pleading standard of Rule 9(b) should apply to all claims. My Pillow responds that Rule 9(b) only applies to those claims that sound in fraud. A claim "sounds in fraud" when it "is premised upon a course of fraudulent conduct." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Here, underlying each of the claims is a purported scheme to defraud My Pillow in order to maximize Telebrands own profits. The claims, which encompass false advertising under the Lanham Act, violations of the IUDTPA and the ICFA, unfair competition, fraud, and breach of contract, all arise out of this fraudulent scheme. They all are premised on a course of fraudulent conduct, and so Rule 9(b) applies to each of them. *See Pirelli*, 631 F.3d at 441; *Cardionet, Inc.*, 2008 WL 567031 at *2; *Desmond*, 921 F. Supp. 2d at 884.

Regarding false advertisement under the Lanham Act, Telebrands contends that My Pillow has not stated this claim with particularity for the circumstances constituting the alleged fraud. My Pillow responds that to support the false advertisement claim it need only allege the specifics regarding the false advertisement itself. My Pillow admits that it does not allege that Telebrands itself falsely advertised, but emphasizes that Telebrands' clients falsely advertised My Pillow's products with Telebrands' encouragement and facilitation. My Pillow alleges the dates and language of several of these alleged false advertisements. However, without alleging that Telebrands was responsible for these violations, this claim cannot proceed. Indeed, Telebrands further argues that My Pillow's Lanham Act claim fails to state a claim because it is based entirely on statements appearing on the websites of third-party retailers. My Pillow states that it is irrelevant that

Telebrands itself did not place the advertisements because Telebrands is subject to contributory liability.

To state a claim of false advertising claim under the Lanham Act, My Pillow must establish that: (1) Telebrands made a material false statement of fact in a commercial advertisement; (2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) My Pillow has been or is likely to be injured as a result of the false statement. *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381–82 (7th Cir. 2018). My Pillow does not dispute that it does not allege that Telebrands itself did not make a material false statement, pivoting in its opposition instead to a theory of contributory liability without relying on any Seventh Circuit authority.

In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014), the Supreme Court addressed the limits of who may sue for false advertising under the Lanham Act, holding that a cause of action is "limited to plaintiffs whose injuries are proximately caused by violations of the statute." 572 U.S. at 132. The Supreme Court's formulation of proximate cause requires My Pillow to plead and prove "economic or reputational injury flowing directly from the deception wrought by [Telebrands'] advertising." *Lexmark*, 572 U.S. at 133.

The only relevant, post-*Lexmark* authority that My Pillow points to is *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248 (11th Cir. 2015). The Eleventh Circuit recognized that whether a plaintiff may bring a claim for contributory false advertising under § 43(a) of the Lanham Act was a matter of first impression in that circuit. *Id.* at 1274. Analogizing to contributory trademark infringement actions, the court found that a plaintiff could assert a claim for contributory false advertising. *Id.* at 1277. To prove contributory negligence in the Eleventh Circuit, the "plaintiff must show that a third party in fact directly engaged in false advertising that injured the

5

plaintiff" and that the "defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *Id.* at 1277.

This novel contributory false advertising claim under the Lanham Act has not been adopted by either the Seventh Circuit or any other circuit. This Court finds that such a claim would be inconsistent with *Lexmark*'s proximate cause formulation. My Pillow's allegations do not explain how any action of Telebrands results in "economic or reputational injury flowing directly from the deception wrought by [Telebrands'] advertising." *Lexmark*, 572 U.S. at 133; *see also Acad. of Doctors of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644, 666 (E.D. Mich. 2017) (explaining that because the Sixth Circuit has not recognized a claim for contributory false advertising under the Lanham Act, such an allegation fails to state a claim). Although this Court declines to find that the Lanham Act provides for a contributory false advertising claim, the Court would also dismiss a contributory false advertising claim under the Eleventh Circuit standard because My Pillow does not allege that Telebrands engaged in the alleged false advertising by inducing, causing, or materially participating in the conduct. For instance, My Pillow has not pleaded how Telebrands' "participated" in the website contents of its retail clients.

As Telebrands concedes (Dkt. 24 at 5), its claims for false advertising under the IUDTPA, the ICFA, and the unfair competition claims rise or fall with its claim under the Lanham Act, which is based on the same alleged deceptive and fraudulent practices. *See Platinumtel Commc'ns, LLC v. Zefcom, LLC*, No. 08-CV-1062, 2008 WL 5423606, at *8 (N.D. Ill. Dec. 30, 2008) (Lefkow, J.) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983)); *Desmond v. Taxi Affiliation Servs. LLC*, 344 F. Supp. 3d 915, 930 (N.D. Ill. 2018) (Lee, J.). As such, because My Pillow does not state a claim under the Lanham Act, it also does not state a claim arising under the IUDTPA, the ICFA, or unfair competition. Furthermore, as the IUDTPA is merely a codification of the common law

unfair competition claim, My Pillow's unfair competition claim need not be separately addressed. *Desmond*, 344 F. Supp. 3d at 930.

Telebrands also contends that My Pillow's claim for fraud should be dismissed pursuant to Rule 9(b) because it is not pleaded with particularity and fails to identify the who, what, when, where, and how of the fraud. My Pillow responds that where a fraud "allegedly occurred over a period of time, the requirements of 9(b) are less stringently applied." (Dkt. 24 at 12 (quoting *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 814 F. Supp. 720, 726 (N.D. Ill. 1993) (Plunkett, J.)). So, My Pillow argues that more general allegations regarding Telebrands' representations are sufficient. My Pillow specifically alleges that Telebrands made false statements of material fact when it promised and agreed to prohibit and prevent its retail clients from falsely advertising My Pillow's products and from purchasing "ad words" on search engines.

The Court finds that My Pillow has met the Rule 9(b) particularity requirements for fraud with regards to false advertisements, but fails to allege sufficient details regarding the ad's word usage. My Pillow's counterclaim alleges that during an in-person meeting at Telebrands' office in New Jersey on August 21, 2018, My Pillow CEO Mike Lindell met with Telebrands representation Bala Iyer, and Lindell showed Iyer examples of false advertising from Telebrands' retailers. Iyer then offered to indemnify My Pillow for any damages incurred from the false advertising. In September 2018, My Pillow informed Telebrands regarding a consent decree, and Telebrands agreed to ensure that its retail clients remove from its advertisements all health claims and/or statements that My Pillow is the "official" pillow of any sleep-related organization. However, My Pillow asserts that Telebrands failed to regulate the false advertisements, as agreed, because it stood to benefit from them. Collectively, My Pillow alleges *how* it informed Telebrands regarding the false advertisements, *who* it informed, *when* and *where* it informed Telebrands for at least some of the allegations, and specifics regarding Telebrands' agreement and results of Telebrands' retailers'

7

ongoing advertisements. *See Fujisawa Pharm.*, 814 F. Supp. at 727; *Swervo Entm't Grp., LLC v. Mensch*, No. 16-CV-4692, 2017 WL 1355880, at *5 (N.D. Ill. Apr. 13, 2017) (Lee, J.).

My Pillow also alleges that Telebrands agreed to prohibit and prevent its retail clients from purchasing "ad words" on Google and other search engines, but does not set forth additional detail. *See, e.g.*, *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 17 C 8829, 2018 WL 3637356, at *11 (N.D. Ill. July 31, 2018) (Castillo, J.). My Pillow does not allege sufficient specifics regarding *what* words the parties agreed are ad words, *how* Telebrands agreed to "prohibit and prevent" its clients from purchasing ad words, the content of those ads, the identify of the retailers, or *when* or *where* the ad words appeared. The allegations fail to put Telebrands on notice regarding the specific fraud that Telebrands itself allegedly engaged in with regards to ad words. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013); *VitalGo, Inc. v. Kreg Therapeutics, Inc.*, No. 16-CV-5577, 2017 WL 6569633, at *9 (N.D. Ill. Dec. 21, 2017) (Dow, J.) ("These parties have been litigating each other over these [pillows] since [2012], and, given their litigation history, [My Pillow has] had a better opportunity than the average litigant to nail down the particulars of the fraud that they are alleging. As such, the Court will not relax the particularity requirement of Rule 9(b)[.]").

Finally, Telebrands contends that My Pillow's breach of contract claim is premised on Telebrands' alleged violations of the Lanham Act, the IUDTPA, and the ICFA, and because these allegations fail to state a claim, they cannot support a breach of contract claim. To the extend the breach of contract claim is based on a violation of the FTC Act, Telebrands asserts that My Pillow fails to allege any specifics regarding Telebrands' conduct that might give rise to an FTC Act violation. My Pillow responds that Telebrands violated various statutes, so My Pillow has breached the compliance with laws clause of the License Agreement. (Dkt. 1-1 § 9(b).)

The Court finds that My Pillow fails to state a claim for breach of contract. Primarily, My Pillow's claim is redundant of its alleged violations of the Lanham Act, the IUDTPA, and the ICFA.

Because the Court dismisses these claims, My Pillow's allegations based on violating these statutes are not viable. Furthermore, the only other specific statute that My Pillow alleges that Telebrands violated is the FTC Act. My Pillow does not allege any specifics that support this claim. My Pillow states nothing beyond its conclusory allegation that My Pillow "failed to comply with Section 5(a) of the FTC Act." (Dkt. 10 ¶ 88.) Such a bare allegation is insufficient to state a claim. The Court dismisses the breach of contract count.

**Conclusion**

Based on the foregoing, Telebrands' Motion to Dismiss My Pillow's Counterclaim [17] is granted in part and denied in part. My Pillow's Counts I–IV, V for fraud as it relates to ad words only, and VI are dismissed. My Pillow's Count V for fraud as it relates to false advertising survives Telebrands' motion to dismiss.

IT IS SO ORDERED.

Date: 4/30/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge