UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TELEBRANDS CORP., | ) |
| Plaintiff, | ) Case No. 18-CV-06318 |
| v. | ) Judge Sharon Johnson Coleman |
| MY PILLOW, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Telebrands Corporation filed a first amended complaint against defendant My Pillow, Inc., alleging six claims: (I) breach of contract, (II) equitable estoppel, (III) breach of implied contract, (IV) unjust enrichment, (V) *quantum meruit,* and (VI) conversion. Telebrands moves to dismiss Counts II-VI of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons outlined below, My Pillow's Partial Motion to Dismiss [45] is granted in part and denied in part.

**Background**

Telebrands is a consumer products marketing company, and My Pillow manufactures and sells its patented pillow product. Telebrands alleges that My Pillow and Telebrands entered into a License Agreement on May 30, 2012, under which My Pillow had the right to market its pillows directly to consumers, and Telebrands had the exclusive right to "advertise, promote, market, distribute, and sell" My Pillow brand pillows in North American brick and mortar retail stores and their associated online outlets. (Dkt. 41-1 §§ 1–2.) The License Agreement provided for a one-year term and would automatically renew for successive one-year terms if Telebrands ordered at least 1,000,000 units in the immediate prior year. (*Id.* § 13.)

1

In the year ending in May 2014, Telebrands purchased 210,000 units. My Pillow's CEO Mike Lindell sent an email to Telebrands that stated: "As you know, the current License Agreement will end <u>on May 30</u> because sales did not hit the 1,000,000 mark. I would like to set up a time to meet with you … to put together a new agreement." (Dkt. 41-2.) The parties did not sign a new agreement. However, the parties continued to do business, with Telebrands purchasing more than eight million My Pillow units from My Pillow since the initial License Agreement in 2012. In March 2018, Telebrands successfully negotiated for Walmart to add the My Pillow product to its main bedding department. Telebrands also had success selling the My Pillow product to a number of other major retails in the U.S., including Kohl's and Bed Bath & Beyond.

On August 21, 2018, My Pillow provided a letter to Telebrands that discontinued its relationship with Telebrands and indicated that My Pillow would fulfill all outstanding purchase orders for which Telebrands had paid a deposit. (Dkt. 41-3.) Telebrands responded to My Pillow by email on August 24, 2018, repudiating My Pillow's attempt to discontinue the parties' business relationship because the License Agreement "remains in full force and effect" and requesting that My Pillow continue "in good faith to honor the parties' agreement." (Dkt. 41-4.) On August 27, 2018, My Pillow sent another letter to Telebrands, taking the position that the License Agreement expired in May 2014 and that no new master agreement was ever entered, so the parties have merely "entered into a series of purchase orders." (Dkt. 41-5.) My Pillow also emailed a Walmart representative on August 30, 2018, regarding the possibility of selling the My Pillow product directly to Walmart. (Dkt. 41-7.)

Telebrands and My Pillow additionally had an understanding that My Pillow would package its product in boxes for sale to Telebrands' retail customers. When My Pillow ordered boxes from a third-party supplier, it represented it would pay for these products. As of August 2018, My Pillow had 517,170 of such boxes in its possession, which were paid for my Telebrands. My Pillow

additionally had ordered 431,447 boxes and 427,700 product labels. My Pillow has not yet reimbursed Telebrands for the boxes in its possession and has not paid the third-party supplier for the additional products it has ordered.

Telebrands brought this suit on September 17, 2018. My Pillow counterclaimed on October 9, 2018 and filed a partial motion to dismiss. On April 30, 2019, the Court granted My Pillow's partial motion to dismiss. On July 17, 2019, Telebrands filed its first amended complaint. My Pillow now moves to dismiss Counts II-VI of the amended complaint for failure to state a claim.

**Legal Standard**

When considering a Rule 12(b)(6) motion, the Court accepts all of the plaintiff's allegations as true and views them "in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**Analysis**

*Count II: Equitable Estoppel*

My Pillow argues that Telebrands fails to state a claim for equitable estoppel and has instead pled promissory estoppel because My Pillow's alleged misrepresentations concern future promises and conduct. Thus, it argues, the claim should be dismissed because it is barred by the statute of frauds.

My Pillow's argument is rejected because Telebrands has properly alleged an equitable estoppel claim. "Promissory estoppel is distinguished from equitable estoppel in that the former allows a party to pursue a claim for damages based on breach of a gratuitous promise of future

3

conduct, and the latter is used as a defense to preclude a party from denying a representation of past or existing fact." *Matthews v. Chicago Transit Auth.*, 2016 IL 117638, 51 N.E.3d 753, 780. The statute of frauds does not preclude a claim for equitable estoppel. *See Roti v. Roti*, 364 Ill. App. 3d 191, 199, 845 N.E.2d 892, 899 (2006). Telebrands lists several promises of future conduct in its equitable estoppel claim, but it also adequately alleges a misrepresentation of past or present fact. It alleges that My Pillow misrepresented that Telebrands was the exclusive distributor of its product into retail and that the parties' relationship was governed by terms outside the exchange of purchase orders. (Dkt. 141 ¶¶36-37.) Thus, Telebrands has properly pled a misrepresentation in support of its equitable estoppel claim.

My Pillow also argues, in a footnote, that Telebrands failed to plead equitable estoppel with particularity pursuant to Fed. R. Civ. P. 9(b). Rule 9(b)'s heightened pleading standards do not apply to equitable estoppel claims, so this argument is rejected. *See Ctr. Ice of DuPage, Inc. v. Burley's Rink Supply, Inc.*, No. 96 C 5537, 1997 WL 534256, at *3 (N.D. Ill. Aug. 20, 1997) (Grady, J).

Accordingly, the motion to dismiss Count II is denied.

*Counts IV and V: Unjust Enrichment and Quantum Meruit*

My Pillow argues that Telebrands' remaining equitable claims—unjust enrichment and *quantum meruit*—cannot stand when it alleges an express and implied-in-fact contract. To hold otherwise, it argues, would permit Telebrands a "second bite at the apple."

While My Pillow is correct that a plaintiff cannot obtain a judgment giving an equitable remedy when it had an adequate legal remedy, *E.g., Hagshenas v. Gaylord*, 199 Ill.App.3d 60, 145 Ill.Dec. 546, 557 N.E.2d 316, 328 (1990), judgments and pleadings are not the same. Parties may plead claims for relief that are mutually inconsistent and that therefore could not coexist in a single judgment. Fed. R. Civ. P. 8(d)(3). This holds true so long as the equitable claim is pled in the alternative to a legal one. *See, e.g., Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th

4

Cir.2003) (allowing inconsistent pleading of breach of contract and unjust enrichment); *In re: First Farmers Financial Litigation*, No. 14-cv-7581, 2016 WL 5940933 at *6 (N.D. Ill. Oct. 13, 2016) (St. Eve, J.) (same).

Because the equitable claims are properly pled in the alternative to a breach of express contract, they are not precluded.[1]

Although Telebrands properly pled both unjust enrichment and *quanatum meruit* as claims in the alternative to the breach of express contract, it has not pled them in the alternative to the breach of implied contract. Unjust enrichment and *quantum meruit* are implied in law and "there can be no contract implied-in-law where an express contract or a contract implied-in-fact exists between the parties and concerns the same subject matter." *Marcatante v. City of Chicago*, Ill., 657 F.3d 433, 443 (7th Cir. 2011) (citing *Zadrozny v. City Colls. of Chi.*, 220 Ill.App.3d 290, 163 Ill.Dec. 93, 581 N.E.2d 44, 48 (1991)). Unjust enrichment and *quantum meruit* claims incorporate by reference paragraphs containing the breach of implied contract claim and, because it is a contract implied-in-fact, they cannot coexist with it.

Telebrands does not explicitly designate whether the contract is implied-in-fact or in-law, but, after analyzing the allegations, the Court finds that Telebrands has alleged a contract implied-in-fact. In an action for contract implied-in-law, "a plaintiff asks the court to remedy the fact that the defendant was 'unjustly enriched' by imposing a contract." *Village of Bloomingdale v. CDG Enter. Inc.*, 196 Ill.2d 484, 500, 256 Ill.Dec. 848, 752 N.E.2d 1090 (2001). "A quasi-contract exists independent of any agreement or consent of the parties" and is "an obligation created by law." *Id.* (quoting *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 334, 13 Ill.Dec. 699, 371 N.E.2d 634 (1977)). On the

---

[1] My Pillow also argues that Telebrands' equitable estoppel claim cannot stand because Telebrands has pled breach of express contract. This argument is rejected for the same reason as the dismissal argument for unjust enrichment and *quantum meruit* are rejected. Additionally, the equitable estoppel claim does not incorporate by reference the breach of implied contract claim and is, therefore, independent of it. To the extent My Pillow argues the equitable estoppel claim should be dismissed on this basis, it is rejected.

5

other hand, a "contract implied-in-fact is one in which a contractual duty is imposed by a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of the promisor which show an intention to be bound." *Kohlenbrener v. North Suburban Clinic, Ltd.*, 356 Ill.App.3d 414, 419, 292 Ill.Dec. 422, 826 N.E.2d 563 (2005). More specifically, an "implied-in-fact contract may be found by examination of the acts of the parties even in the absence of any express statement of specific agreement regarding the details of the contractual relationship." *Id.*

Telebrands alleges that "Telebrands and My Pillow demonstrated their mutual intent to contract on these terms based on the extensive course of dealing between the parties from May 2014 to August 2018." (Dkt. 141 ¶ 57.) It further alleges that the parties "understood and agreed" that Telebrands would provide promotional, marketing, and product packaging design services in exchange for license to exclusively distribute My Pillow Products to retailers. (*Id.* ¶ 50.) It describes its own actions and the actions of My Pillow as being in pursuit of their "obligation" under this agreement. (*Id.* ¶¶51, 53, 54, 56.) Thus, Telebrands has pled a contract implied-in-fact. Accordingly, because its unjust enrichment and *quantum meruit* claims cannot coexist with an implied-in-fact contract and are not pled in the alternative to it, they are dismissed.

*Count III: Breach of Implied Contract*

My Pillow asserts that Telebrands' breach of implied contract should be dismissed because the statute of frauds precludes the claim and because an implied-in-fact contract cannot coexist with an express contract regarding the same subject matter.

Telebrands responds that it has pled an implied contract for services and, thus, the statute of frauds does not apply. It argues that the incentive for the parties' relationship was the provision of Telebrands' services, including promotional, marketing, and product design, placing My Pillow product in high traffic areas of retail stores, consulting services, among others. It further argues that

the express contract claim does not preclude its implied contract claim because it is pled in the alternative.

The Court rejects My Pillow's argument that the breach implied contract claim cannot coexist with the breach of express contract claim because Telebrands has properly pled it in the alternative. Regardless, the Court agrees with My Pillow's argument that the statute of frauds precludes the breach of implied contract claim.

The statute of frauds applicable to the sale of goods, Section 2-201(1) of the Uniform Commercial Code ("UCC"), makes a contract for the sale of goods worth at least $500 unenforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." 810 ILCS 5/2-201(1) (Illinois law adopting the UCC statute of frauds). Illinois courts consistently hold that the statute of frauds is a defense to the enforcement of implied contracts. *See, e.g.*, *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, No. 11-2160, 2011 WL 6000828, at *3 (C.D. Ill. Nov. 1, 2011), report and recommendation adopted, No. 11-2160, 2011 WL 6000888 (C.D. Ill. Nov. 30, 2011); *Palmateer v. Int'l Harvester Co.*, 85 Ill. App. 3d 50, 52, 406 N.E.2d 595 (3rd Dist. 1980), aff'd in part, rev'd in part, 85 Ill.2d 124, 421 N.E.2d 876 (1981).

In Illinois, when a contract covers both the sale of goods and services, the "predominant purpose" test is used to determine which section of the UCC covers the contract. *See Ryan v. Wersi Elecs. GmbH & Co.*, 3 F.3d 174, 181 n.3 (7th Cir. 1993). If the contract is predominately for the sale of goods, the contract will be governed by Article 2 of the UCC. *Geneva Int'l Corp. v. Petrof, Spol, S.R.O.*, 608 F. Supp. 2d 993, 999 (N.D. Ill. 2009) (Moran, J.). "Distributorship agreements … are frequently though not always classified as UCC contracts under the predominant-purpose test." *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1184 (7th Cir. 1991).

7

In its April 30, 2019 order, the Court dismissed Telebrands' original claim for breach of implied contract pursuant to the statue of frauds because the alleged implied contract's predominant purpose was the sale of goods. Telebrands has since attempted to replead the count as one based on an implied contract for services so that it may avoid the same problem, but has failed to do so. In its amended complaint, Telebrands lists a number of services it allegedly contracted to perform, including promotional, marketing, and product packaging design services. It argues in its briefing that the terms of the implied contract are distinct from the express contract, but many of these services it alleges were contemplated in the express contract. This includes Telebrands' exclusive license to "advertise, promote, market, distribute, and sell" My Pillow's product. (Dkt. 41-1 §1.)

Regardless whether the alleged implied contract and the express contract contemplate different obligations, the alleged implied contract in the amended complaint is still an exclusive retail distribution and licensing agreement. All of the services Telebrands describes are performed for the purpose of selling My Pillow products and, therefore, the alleged implied contract is governed by the UCC and is subject to the statute of frauds. *See Heiman v. Bimbo Foods Bakeries Distribution Co., 902 F.3d 715, 719 (7th Cir. 2018)* (holding a distribution agreement's primary purpose was the sale of goods even when a "significant amount of services" are contemplated under the Agreement because "all of the service provisions are incidental to the larger purpose of the contract, which is to sell goods to consumers."); *Monetti*, 931 F.2d at 1184 (contract for exclusive distribution rights, which included specified minimum purchases of goods, deemed a contract for the sale of goods where the amount in sales contemplated "swamped" the intangibles associated with the former distributor's operation); *Ryan*, 3 F.3d at 181 n.3 (exclusive distributorship for sale of musical instruments was a mixed contract, but predominantly a contract for the sale of goods). Because the Statute of Frauds bars an implied contract for the sale of goods, Count III is dismissed.

*Count VI: Conversion*

Finally, My Pillow argues that the conversion count should be dismissed because Telebrands fails to plead three of the four elements. To establish conversion in Illinois, a plaintiff must demonstrate that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Joe Hand Promotions, Inc. v. Lynch*, 822 F. Supp. 2d 803, 806 (N.D. Ill. 2011) (Holderman, J.) (citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70, 184 Ill.2d 109, 234, Ill. Dec. 455 (1998)). My Pillow argues that Telebrands has failed to properly allege he last three elements.

Telebrands argues it was not required to plead that it made a demand for the boxes because the demand would have been futile. To that end, Telebrands alleges in its amended complaint that My Pillow had used "at least a portion" of the boxes and they were no longer in its possession. (Dkt. 41.) Telebrands is correct that Illinois courts do not require the plaintiff to allege a demand if the defendant had already disposed of the property, making the demand for possession fruitless. *See Monroe Cty. Water Co-op. v. City of Waterloo*, 107 Ill.App.3d 477, 63 Ill.Dec. 315, 437 N.E.2d 1237, 1240 (1982). To the extent that the conversion claim applies to property already used by My Pillow, a demand is not required because it would be futile. *See Zissu v. IH2 Prop. Illinois, L.P.,* 157 F. Supp. 3d 797, 803–04 (N.D. Ill. 2016) (Lee, J.) (holding demand would be futile when defendant disposed of the property at issue); *Swift v. DeliverCareRx, Inc.*, No. 14 C 03974, 2015 WL 3897046, at *7 (N.D. Ill. June 23, 2015) (Chang, J.) (futility argument accepted when the defendant employer had told its employee that the stock options it had allegedly converted were "gone."). To the extent Telebrands pleads a conversion claim for property that is still in My Pillow's possession, Telebrands does not meet the pleading standard because, as it admits in its briefing, it failed to meet the demand requirement. *See Am. Inter-Fid. Corp. v. M.L. Sullivan Ins. Agency, Inc.*, No. 15 C 4545, 2016 WL

9

3940092, at *7 (Pallmeyer, J.) (N.D. Ill. July 21, 2016) (rejecting a futility argument when Plaintiff has not alleged that Defendant had disposed of the property in question).

As to the remaining two factors, whether Telebrands has an absolute and unconditional right to the immediate possession of the property and whether My Pillow wrongfully and without authorization assumed control, dominion, or ownership over the property, Telebrands offers nothing more in its pleadings beyond a recitation of the legal factors, with no facts in support. Telebrands' "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Thus, Count VI is dismissed.

If Telebrands seeks to amend its complaint once more to state a claim for conversion, it can only do so for property that is no longer in My Pillow's possession. The futility exception will not apply to the property in My Pillow's possession for which Telebrands has not made a demand.

**Conclusion**

Based on the foregoing, My Pillow's Partial Motion to Dismiss [45] is granted in part and denied in part. The Motion to dismiss is denied with respect to Count II. The motion is granted with respect to Count III, which is dismissed with prejudice. Finally, the motion is granted with respect to Counts IV-VI, which are dismissed without prejudice. If Plaintiff wishes to attempt a second amended complaint, the Court grants it leave to file one by no later than February 20, 2020. IT IS SO ORDERED.

Date: 1/21/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge