UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TELEBRANDS CORP., | ) |
| Plaintiff, | ) Case No. 18-CV-06318 |
| v. | ) Judge Sharon Johnson Coleman |
| MY PILLOW, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Telebrands Corporation filed a first amended complaint against defendant My Pillow, Inc., alleging six claims: (I) breach of contract, (II) equitable estoppel, (III) breach of implied contract, (IV) unjust enrichment, (V) *quantum meruit*, and (VI) conversion. My Pillow filed a two-count amended counterclaim against Telebrands alleging fraud and unfair competition. Telebrands moves to dismiss the entire counterclaim pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the reasons outlined below, Telebrands' motion to dismiss [51] is granted in part and denied in part.

**Background**

My Pillow is a manufacturer and seller of its patented pillow product online and in retail stores, and Telebrands is a consumer products marketing company. The counterclaim alleges that My Pillow and Telebrands entered into a May 20, 2012 License Agreement, under which My Pillow had the right to market its pillows directly to consumers and Telebrands had the exclusive right to "advertise, promote, market, distribute, and sell" the My Pillow pillows in certain stores. (Dkt. 1-1 §§ 1–2.) The License Agreement required Telebrands to comply with all applicable laws in performing under the License Agreement, including complying with the FTC Act. (*Id.* § 9(b).) The License Agreement further provided for a one-year term and would automatically renew for

successive one-year terms if Telebrands ordered at least 1,000,000 units in the immediate prior year. (*Id.* § 13.) My Pillow alleges that the License Agreement automatically terminated by its terms in 2014, but the parties continued their business relationship through a series of purchase orders.

Following the termination of the License Agreement, Telebrands represented and agreed not to engage in false advertising of the My Pillow product and to prevent its retail clients from engaging in false advertising. My Pillow alleges as an example that in September 2018 Walgreens.com listed My Pillow's product as "Telebrands My Pillow" and showed a box image that contained an endorsement of the product as "National Sleep Foundation Official Pillow." At that time My Pillow was subject to a consent decree that prohibited My Pillow from making any health claims about its product or advertising it as an "official" product of any organization. My Pillow alleges that it informed Telebrands of the decree, and Telebrands agreed to ensure that its retail clients remove from its advertisements all health claims and/or statements that My Pillow is the "official" pillow; however, Telebrands failed to monitor its retail clients' advertisements to ensure the retailers complied with My Pillow's directives. In 2016, My Pillow informed Telebrands representative Bala Iyer about false advertisements by several of Telebrands' retailers and Iyer assured My Pillow that "we will address this right away and keep you updated." (Dkt. 48-1 at Ex. G.) Iyer responded similarly at other times when My Pillow brought up concerns about Telebrands' retailers falsely advertising the My Pillow product. During an in-person meeting at Telebrands' office in New Jersey on August 21, 2018, My Pillow CEO Mike Lindell met with Iyer, and Lindell showed Iyer examples of false advertising from Telebrands' retailers. Iyer then offered to indemnify My Pillow for any damages incurred from the false advertising.

My Pillow further alleges that Telebrands represented and agreed to prohibit and prevent its retail clients from purchasing "ad words" on Google and other search engines. Telebrands has a profit motivation to continue to allow its retailers to purchase ad words, as each ad word purchase

drives a customer to purchase a pillow from a Telebrands' retailer and not from My Pillow directly. Despite numerous demands from My Pillow to Telebrands for its retail clients to stop purchasing ad words, Telebrands has not taken sufficient corrective actions to stop the improper conduct from several of its retailers.

On August 21, 2018, My Pillow informed Telebrands of its decision to discontinue its business relationship with Telebrands. Telebrands sued My Pillow on September 17, 2018. My Pillow brought its counterclaim on October 9, 2018. Telebrands filed a motion to dismiss My Pillow's counterclaim on October 30, 2018, which the Court granted in part and denied in part. My Pillow filed an amended counterclaim on August 27, 2019. Telebrands now moves to dismiss the entire counterclaim pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

**Legal Standard**

When considering a Rule 12(b)(6) motion, the court accepts all of the plaintiff's allegations as true and views them "in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Moreover, allegations of fraud must be pleaded in conformance with Rule 9(b). *See Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). Under Rule 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint must allege "the who, what, when, where, and how of the fraud." *Id.*

**Analysis**

*I. Fraud*

Telebrands contends that My Pillow's claim for fraud should be dismissed pursuant to Rule 9(b) because it is not pled with particularity and fails to identify the who, what, when, where, and how of the fraud. My Pillow responds that where a fraud "allegedly occurred over a period of time, the requirements of 9(b) are less stringently applied." (Dkt. 51 at 10 (quoting *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 814 F. Supp. 720, 726 (N.D. Ill. 1993) (Plunkett, J.)). Additionally, My Pillow argues that its allegations for the ongoing fraud should be considered collectively. My Pillow specifically alleges that Telebrands made false statements of material fact when it promised and agreed to prohibit and prevent its retail clients from falsely advertising My Pillow's products and from purchasing ad words on search engines.

  A. False Advertisements

In its April 30, 2019 order, the Court found that My Pillow has met the Rule 9(b) particularity requirements for fraud with regards to false advertisements. Telebrands urges the Court to reconsider its decision when analyzing the amended counterclaim and dismiss the fraud claim as to false advertisements because My Pillow has failed to plead fraud with particularity. The Court denies Telebrands' request.

My Pillow alleges in its amended counterclaim that Telebrands represented and agreed, on multiple occasions, not to engage in false advertising of the My Pillow product, and to prevent its retail clients from engaging in false advertising. My Pillow alleges that despite these representations, Telebrands permitted its retail clients to consistently falsely advertise the My Pillow product because Telebrands stood to benefit.

Telebrands argues that My Pillow has failed to sufficiently plead a false statement which Telebrands could have made to induce My Pillow into continuing its business relationship. To the

4

contrary, along with the allegations the Court considered in its April 30, 2019 order, My Pillow alleges further examples of false statements in support of its fraud claim. For example, in March of 2016, My Pillow informed Bala Iyer of Telebrands about false advertisements from many retailers and indicated pressure from watch dog groups on claims related to its products containing memory foam and being hypoallergenic. In response, Iyer stated "we will address this right away and keep you updated." (Dkt. 48-1 at Ex. G.) Also in March 2016, My Pillow informed Iyer that Bed Bath & Beyond was advertising My Pillow as a "memory foam" product, which it is not. Iyer stated "I will address this first thing tomorrow morning." (Dkt. 48-1 at Ex B.) Despite these statements, My Pillow alleges that retailers were still falsely advertising My Pillow product as late as 2018, including ones regarding health claims and the substance of the pillow filling. (Dkt. 48 ¶¶38-39.) My Pillow has pled at least some specifics of *who* from Telebrands made a representation, *what* was said, *when* and *where* the representation was made, the and *how* it was carried out. Accordingly, Telebrands' motion to dismiss the fraud claim as to the false advertisements is denied.

B. Ad Words

In its April 20, 2019 order, the Court dismissed My Pillow's claim for fraud as to ad words because "My Pillow does not allege sufficient specifics regarding *what* words the parties agreed are ad words, *how* Telebrands agreed to 'prohibit and prevent' its clients from purchasing ad words, the content of those ads, the identity of the retailers, or *when* or *where* the ad words appeared." (Dkt. 29 at 8.) Telebrands argues that the amended counterclaims remains similarly deficient and should be dismissed. The Court disagrees.

My Pillow has sufficiently bolstered its amended counterclaim to pass Rule 9(b) scrutiny. It alleges that ad words at issue are words or phrases that help an advertiser target its services and products to a specific audience. (Dkt. 48 ¶ 43.) As an example, an ad word could be "My Pillow" and will result in a company's webpage being brought to the forefront on search engines like

5

Google.  My Pillow has provided several examples of Telebrands retailers that purchased ad words over time, including Shopko, Walmart, Target, Walgreens, Kohl's, and others. (*Id.* ¶¶ 46-48, 53-55, 62-64.)

My Pillow alleges several statements by Telebrands employees, written in emails, as examples of misrepresentations that My Pillow will be monitoring and preventing retailers from purchasing My Pillow ad words.  For example, on March 16, 2016, in response to a complaint from My Pillow about several Telebrands retailers purchasing ad words, Bob Barnett of Telebrands responded "We are contacting everyone. Please let us know if you don't see a change promptly." (Dkt. 48-1 at Ex. H).  On another date, Marc Jacobs of Telebrands responded "I am on it" after My Pillow's multiple complaints about retailers purchasing ad words, including Walgreens and Bed Bath & Beyond.  (Dkt. 48-1 at Ex. K.)  My Pillow includes several other similar examples in the amended counterclaim.

Telebrands argues that the frequency of examples of retailers purchasing ad words that My Pillow has alleged only shows that "it is impossible to control the actions of third parties."  (Dkt. 51 at 9.)  It further argues that My Pillow's allegations simply describe its attempts to be a good business partner.  My Pillow alleges several statements in which Telebrands asserted it will contact Telebrands' retailers to ask them to stop buying ad words and urged My Pillow to reach out if it does not see a change.  My Pillow additionally provides repeat examples of retailers continuing to purchase ad words after these statements were made.  Regardless of Telebrands' position that its own promises were unrealistic, My Pillow has sufficiently alleged at least some instances of *who* at Telebrands made a representation, *what* was said, *when* and *where* the representation was made was made, the and *how* it was carried out.  Thus, Telebrands' motion to dismiss My Pillow's fraud claim as to ad words is denied.

6

*II. Unfair Competition*

Telebrands argues that My Pillow's unfair competition claim should be dismissed because it fails to meet Rule 9(b) pleading requirements and is a re-assertion of the same claim the Court already dismissed in its April 30, 2019. In that order, the Court dismissed My Pillow's Lanham Act claim for false advertising because it failed to plead that Telebrands engaged in the alleged false advertising of its retailers by inducing, causing, or materially participating in the conduct. (Dkt. 29 at 6) The Court noted that My Pillow had not, for example, pled how Telebrands' "participated" in the website contents of its retail clients. (*Id.*) Given that My Pillow did not plead the Lanham Act claim with particularity, the Court also dismissed My Pillow's unfair competition claim because they were based on the same alleged deceptive and fraudulent practices. My Pillow conceded they rose and fell together because the legal injury was the same, citing *BlueStar Mgmt. v. The Annex Club, LLC,* 09 C 4540, 2010 WL 2802213, at *8 (N.D. Ill. July 12, 2010) (Gettleman, J.).

In its amended counterclaim, My Pillow alleges essentially the same unfair competition claim that was previously dismissed, arguing it should stand because the Court previously only dismissed the its unfair competition claim as to false advertisements, not ad words. To the contrary, the Court dismissed its claim in its entirety. Furthermore, while My Pillow has pleaded a misstatement for purposes of its fraud claim, it still has not pleaded with particularity that Telebrands induced, caused, or materially participated in its retailers purchasing of ad words. In fact, there are no new allegations to that end in the amended counterclaim. Accordingly, the claim is dismissed.

**Conclusion**

Based on the foregoing, Telebrands' Motion to Dismiss [51] is granted in part and denied in part. Telebrands' motion to dismiss My Pillow's fraud claim is denied and the motion to dismiss the

7

unfair competition claim is granted.  My Pillow's unfair competition claim is dismissed with prejudice.

IT IS SO ORDERED.

Date: 1/21/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge