UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TELEBRANDS CORP., ) | |
| ) | |
| Plaintiff, ) | Case No. 18-CV-06318 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| MY PILLOW, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Telebrands Corporation ("Telebrands") filed a second amended complaint against defendant My Pillow, Inc. ("My Pillow") alleging breach of contract, equitable estoppel, and conversion. Defendant now moves for summary judgment. This case is a classic example of the perils of conducting business transactions without an executed agreement in place. While this Court is sympathetic to plaintiff (and is keenly aware of defendant's unusual business practices and CEO Mike Lindell's shocking commentary), the contract clearly ended when plaintiff failed to meet the 1,000,000 unit requirement. But the record is not as clear on plaintiff's conversion claim. For the reasons set forth below, defendant's motion for summary judgment [94] is granted in part and denied in part.

**I.      Legal Standard**

For the purposes of this order, the Court incorporates the facts as described in its Memorandum Opinion and Order on Plaintiff's Motion to Strike and Exclude. Summary judgment is proper when "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017), *reh'g denied* (Mar. 27, 2017) (quoting *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 56(a). In deciding whether summary

1

judgment is appropriate, this Court accepts the nonmoving party's evidence as true and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The Court may enter summary judgment only if the record establishes that no reasonable jury could find for the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

**II.     Analysis**

    *a.  Breach of Contract*

Defendant moves for summary judgment on Count I of plaintiff's complaint, breach of contract, on the grounds that the Agreement automatically ended in 2014 when plaintiff failed to meet the 1,000,000 units requirement. Plaintiff claims that the Agreement is not as straightforward as defendant suggests. The Agreement states that it is for one year and "shall be automatically renewed for successive one-year terms provided unit orders or sales of Current Product shall have reached at least 1,000,000 during the immediate prior year of the term of this Agreement." Dkt. No. 1, Compl. Ex. 1, at 5. It is undisputed that when plaintiff failed to meet the 1,000,000 unit requirement in 2013, the Agreement did not automatically renew. Indeed, plaintiff did not have the right to automatic renewal. *See MindGames, Inc. v. Western Pub. Co., Inc.*, 218 F.3d 652, 654 (7th Cir. 2000) (stating that a "conditional right in a contract does not become an enforceable right until the condition occurs). Plaintiff instead claims that a lack of automatic renewal is not the same as automatic termination. Plaintiff contends that the contract may not have automatically renewed, but it did not automatically terminate and notice of termination was still required. But plaintiff's argument defies logic. Unambiguous contract terms must be interpreted according to their plain meaning. *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 993 (7th Cir. 2007). The Agreement was for a fixed term of one year. The renewal clause is unambiguous. Under its plain meaning, the agreement expired after that one year since it did not automatically renew. There can be no breach

of contract claim based on the Agreement because the Agreement did not govern the parties' business dealings after 2013.[1]

Plaintiff points to a separate provision of the Agreement that expressly calls for automatic termination if plaintiff failed to order at least 200,000 units in the first six months as evidence that the parties would have explicitly provided for automatic termination if they truly intended to. But failure to meet the 1,000,000 unit renewal requirement is, in effect, the same as the automatic termination clause. Put simply, automatic termination and the absence of renewal both result in discontinuing the agreement. This case is distinguishable from the case plaintiff cites in support of their argument, *Echo, Inv. v. Whitson Co., Inc.*, 121 F.3d 1099 (7th Cir. 1997). In *Echo*, the Seventh Circuit analyzed two conflicting termination clauses in determining that the contract was ambiguous. But the two clauses at issue here are not conflicting. Section 13 provides that the Agreement will not renew if Telebrands does not order 1,000,000 units in the entire contract year. Section 3(f) provides that the Agreement will automatically terminate if Telebrands does not order at least 200,000 units in the first six months of the contract year. The contract here was not ambiguous as to what was required to continue the business relationship.

Without much support, plaintiff claims that a notice of termination was required to end the Agreement. First, there is no language in the Agreement requiring a notice of termination. The failure to perform terminates the Agreement. Second, even if the Agreement did not automatically terminate and notice of termination was required, Lindell's 2014 email is clear evidence of termination. The email states that the Agreement "will end on May 30," suggests discussing a *new* agreement, and reiterates that the Agreement "ends at the end of this month." Dkt. 116, Pl.'s Resp.

---

[1] Plaintiff points out that defendant only claims the Agreement ended in 2014 and not 2013, suggesting that defendants intended for the contract to extend. But the subjective intent of the parties does not determine the existence of an agreement; rather, the written terms themselves do. *See Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 712 (7th Cir. 2019). Under the written terms, the contract ended in 2013.

3

to Def.'s Statement of Facts, at 7. Plaintiff admits to not following up in writing to this email and does not recall any specifics of an oral conversation with Lindell about the email. *See Id.*, at 7-8. Plaintiff knew it failed to meet the 1,000,000 requirement, received this email suggesting negotiating a new agreement, and yet failed to enter into another agreement. Plaintiff cannot now claim that defendant violated a contract when no such contract existed, despite multiple opportunities to enter into a new agreement. Defendant's motion for summary judgment on the breach of contract claim is granted.

      b. *Equitable Estoppel*

Defendant moves for summary judgment on the equitable estoppel claim on the grounds that equitable estoppel is only a defense, not a cause of action. Plaintiff claims that equitable estoppel is a proper claim. While this district has conflicting guidance on whether equitable estoppel is an affirmative claim in Illinois and both parties largely ignore the other's caselaw, the more recent caselaw holding that equitable estoppel is an affirmative defense that prevents a party from asserting a particular claim, not a cause of action, is more persuasive. *See Healy v. Moderne Capital, LLC,* 20 C 567, 2020 WL 4464702, at *2 (N.D. Ill. Aug. 4, 2020) (Feinerman, J.); *see also Miller v. UMG Recordings, Inc.*, 19 C 2262, 2020 WL 635909, at *5 (N.D. Ill. Feb. 10, 2020) (Blakey, J.) (citing *SFRL Inc. v. Galena State Bank & Tr. Co.,* 11 C 50277, 2013 WL 497600, at *7 (N.D. Ill. Feb. 7. 2013)) (Reinhard, J.); 28 Am. Jur. 2d Estoppel and Waiver § 34 (stating that promissory estoppel is offensive, whereas equitable estoppel is defensive and "can be used only for preventing the opposing party from raising a particular claim or defense"); *comp. All Printing Resources, Inc. v. Goodyear Canada, Inc.*, 97 C 6431, 1998 WL 564605, at *6 (N.D. Ill. Aug. 31, 1998) (interpreting *R.S. Bennett & Co. v. Econ. Mech. Indus., Inc.*, 606 F.2d 182, 189 (7th Cir. 1979) as allowing an affirmative equitable estoppel claim).

4

Further the Seventh Circuit has acknowledged the general proposition that equitable estoppel is a defensive doctrine and not an affirmative cause of action. *See Peters v. Gilead Scis., Inc.*, 533 F.3d 594, 599, n. 5 (7th Cir. 2008) (stating promissory estoppel is "a cause of action," but equitable estoppel "is a defensive doctrine"); *see also Olson v. Bemis Co., Inc.*, 800 F.3d 296, 306 (7th Cir. 2015) (stating "we strongly doubt that [equitable estoppel] is an independent cause of action under federal labor common law"). Plaintiff's equitable estoppel claim is dismissed.

  c. *Conversion*

Defendant also moves for summary judgment on plaintiff's conversion claim based on the boxes and labels defendant used, presumably to ship its products. To establish a conversion claim in Illinois, a plaintiff must demonstrate that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Joe Hand Promotions, Inc. v. Lynch*, 822 F. Supp. 2d 803, 806 (N.D. Ill. 2011) (Holderman, J.) (citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70, 184 Ill.2d 109, 234, Ill. Dec. 455 (1998)). Defendant claims that plaintiff cannot meet any of these elements. Yet again, the parties considered but ultimately did not enter into a written agreement for the purchase of these materials. Plaintiff's response is brief; it cites no caselaw and does not address each of the elements of its own claim.

First, the Court previously addressed defendant's claim that plaintiff did not meet the demand element in its ruling on the motion to dismiss. The Court noted that a demand is not required for property already used by defendant because a demand for such property would be futile. *See* Dkt. 70, Memorandum Opinion and Order, at 9.[2]

---

[2] Plaintiff's amended conversion claim explicitly applies only to property that defendant has already used.

Second, the Court previously warned that as to "whether Telebrands has an absolute and unconditional right to the immediate possession of the property and whether My Pillow wrongfully and without authorization assumed control…Telebrands offers nothing more in its pleadings beyond a recitation of the legal factors, with no facts in support." Plaintiff now offers statements by Lindell and another My Pillow employee, Robert Sohns, to support its conversion claim. Lindell repeatedly refers to the boxes as the plaintiff's boxes. *See* Dkt. 115, Pl.'s Resp. to Def.'s Statement of Facts, Ex. Q, at 249:1 ("he went and bought his own boxes"; "I had to go pay for his boxes that had his stuff on there"; "these boxes that Telebrands owned"). Lindell's testimony appears to suggest that defendant paid for storage of boxes that plaintiff owned; but the boxes themselves were paid for and owned by plaintiff. Defendant further admits that Lindell asked Sohns to put together an inventory of *plaintiff's* boxes and labels. *See* Dkt. 125, Def.'s Resp. to Pl.'s Statement of Additional Facts, at 22. Sohns sent this list, titled "Telebrands Inventory," to Iyer on October 4, 2018. *Id.* at 23. Additionally, Sohns testified that he understood that plaintiff paid for the boxes and labels and that the materials were to be used for sales to plaintiff's customers, not defendant's customers. *See* Dkt. 116, Pl.'s Resp. to Def.'s Statement of Facts Ex. S, at 128:14 – 129:9. Defendant does not address Lindell's testimony or Sohn's testimony in its reply. Defendant asserts that it had a right to the boxes the plaintiff paid for and defendant's own employees thought plaintiff owned, and is somehow shocked that plaintiff would suggest that is conversion. There clearly is an issue of fact that precludes summary judgment.

### III. Conclusion

Defendant's motion for summary judgment is granted in part and denied in part. **IT IS SO ORDERED**.

Date: September 13, 2021          Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

6